UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JONATHAN TREIGLE, HUSBAND**<br>**OF/AND CHRISTINE TREIGLE** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-9519** |
| **ALLSTATE INDEMNITY COMPANY** | **SECTION: "S" (2)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Allstate Indemnity Company's motion for partial summary judgment on the issue of double recovery is **DENIED**.  (Document #17.)

**IT IS FURTHER ORDERED** that the cross motion for partial summary judgment of Jonathan Treigle and Christine Treigle on the issue of double recovery is **DENIED**.  (Document #27.)

**IT IS FURTHER ORDERED** that the motion for partial summary judgment of Jonathan Treigle and Christine Treigle on the issue of the measure of recovery is **DENIED**.  (Document #23.)

**IT IS FURTHER ORDERED** that the Treigles' motion to strike the final report prepared by the flood insurance adjuster is **GRANTED**.  (Document #24.)

## I. BACKGROUND

Jonathan and Christine Treigle sustained wind and flood damage to their home at 3228 Bradbury Street in Meraux, Louisiana, as a result of Hurricane Katrina.  The Treigles' home was insured under a homeowner's insurance policy issued by Allstate Indemnity Company (Allstate) and a standard flood insurance policy issued under the National Flood Insurance Program.  The homeowner's insurance policy had the following coverage limits: dwelling, $123,000 (Coverage A); other structures, $12,300 (Coverage B); personal property, $86,100 (Coverage C); and loss of use, unlimited up to 12 months (Coverage D).  The limit of coverage under the flood insurance policy was $122,370.04.  Based on a policy decision that all homes in their zip code sustained heavy damage, the Treigles expeditiously received policy limits for flood damage of $121,370.04, after subtracting a $1,000 deductible.  Allstate tendered $6,606.52 for the dwelling under Coverage A, policy limits of $86,100 for contents under Coverage C, and $27,129.03 for additional living expenses under Coverage D.  The Treigles demanded an additional $114,669.80, the balance of the homeowner's policy limit, for the damage to the dwelling, and Allstate denied the claim.

The Treigles filed a complaint against Allstate in the 34th Judicial Civil District Court for the Parish of St. Bernard, alleging breach of contract and bad faith failure to pay the claim, pursuant to La. Rev. Stat. 22:658.  Allstate removed the case to federal court based on diversity jurisdiction.[1]

---

[1] The plaintiffs originally participated in a class action lawsuit filed in state court against four unrelated insurers.  After the action was removed to federal court, Judge Barbier issued an order that the plaintiffs file an amended complaint for each individual property claim,

Allstate filed a motion for partial summary judgment on the issue of whether the Treigles can recover for the same loss for which they have been compensated under the flood policy, and the Treigles filed a cross motion for summary judgment on the issue. The Treigles filed a second motion for partial summary judgment on the issue of the measure of recovery, *i.e.* whether Allstate must pay the cost of repairing/rebuilding the home up to the coverage limit of $123,000 or whether their obligation is limited to the actual cash value of the property.

## II. DISCUSSION

### A. Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### B. Double recovery

---

naming the individual plaintiffs, the defendants, and the specific claim. The amended complaints were given a new docket number and allotted randomly.

Allstate contends that the Treigles are seeking recovery for the same loss under their homeowner's policy for which they have been compensated under the flood policy. They argue that recovery under their homeowner's policy is limited to the difference between the pre-Katrina actual cash value of the property and the $121,370.04 in insurance payments that the Treigles already received under their flood insurance policy.

"An indemnity agreement is a specialized form of contract which is distinguishable from a liability insurance policy." Black v. First City Bank, 642 So.2d 151, 155 (La. 1994). Insurance contracts against loss are contracts of indemnity. See id. An insured cannot recover an amount greater than the loss, and no double recovery is permitted. See Johnson v. State Farm Fire & Cas. Co., 2008 WL 2178059 (E.D. La. 2008); see Cole v. Celotex Corp., 599 So.2d 1058, 1080 (La. 1992) ("As a general rule the claimant may recover under all available coverages provided that there is no double recovery.")(citing 15A Couch on Insurance 2d § 56:34 (1983)). "When an insured has already received compensation for the full value of his or her property, he or she is not entitled to recharacterize as wind damage those losses for which he or she has already been compensated by previously attributing them to flood waters." Id. (citing Wellmeyer v. Allstate Ins. Co., 2007 WL 1235042 at *3 (E.D. La. 2007)) (internal quotation omitted). "A plaintiff whose property sustains damage from flood and wind can clearly recover for his or her segregable wind and flood damages except to the extent that he seeks to recover twice for the same loss." Id. (citing Weiss, 2007 WL 891869 at *2)). "Plaintiffs are entitled to recover . . . any previously uncompensated losses that are covered by the homeowner's policy and which, when combined with their flood proceeds, do not exceed the value of their property."

Id.

Outstanding issues of fact exist regarding how much the Treigle's property was worth at the time Katrina struck and the extent to which the property was destroyed by wind, a covered peril under the homeowner's policy.  There are disputed issues of material fact concerning recovery of previously uncompensated, covered wind damage.  At trial, the plaintiffs will have the burden of proving the amount of damage caused by the covered peril of wind, for which they seek recovery under their homeowner's policy, and the defendant will have the burden of proving whether the damages sought were previously attributed to flood damage.  Accordingly, Allstate's  motion for partial summary judgment is denied, and the Treigle's cross-motion for partial summary judgment on the issue is also denied.

## C.  Measure of recovery

### 1.  Actual cash value

The Treigles contend that the policy mandates that Allstate pay the cost of repairing/rebuilding their home up to the dwelling limit of $123,000 under Coverage A.  The Treigles argue that the policy does not state that Allstate's liability is limited to the pre-Katrina value of their home.

The homeowner's policy provides for payment of a covered loss under Coverage A as follows:

> **5.  How We Pay for a Loss**
> Under **Coverage A - Dwelling Protection**, payment for covered loss will be one or more of the following methods:
> . . . .

    B) Actual Cash Value.  If you do not repair or replace the damaged, destroyed or stolen property, payment will be made on an actual cash value basis.  This means there may be a deduction for depreciation.  Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property regardless of the number of items involved in the loss.
    C) Building Structure Reimbursement.
Building Structure Reimbursement will not exceed the smallest of the following amounts:
1) the replacement cost of the part(s) of the building structure(s) for equivalent construction for similar use on the same premises;
2) the amount actually and necessarily spent to repair or replace the damaged building structure(s) with equivalent construction for similar use on the same residence premises; or
3) the limit of liability applicable to the building structure(s) as shown on the Policy Declarations for Coverage A-Dwelling Protection or Coverage B-Other Structures Protection, regardless of the number of building structures and structures other than building structures involved in the loss.

As a preliminary matter, the Treigles ask the court to strike the adjuster's report as an exhibit in this motion for summary judgment because it is hearsay and is unauthenticated, improper proper summary judgment evidence. The Treigles maintain that the cost to repair or rebuild is $239,098.19.  Allstate assumes *arguendo* by way of example that the actual cash value of the plaintiffs' dwelling was $145,293.75 on the day before Hurricane Katrina, based on the conclusions of William Wise, the flood insurance adjuster.  See Def.'s exh. A.

The motion to strike the adjuster's report is granted.  The issue before the court in this motion for summary judgment is the interpretation of the policy as to the method of payment of a covered loss.  The parties have not presented competent summary judgment evidence to determine the actual cash value of the home.

The policy provides for replacement cost only if the plaintiffs repair, rebuild, or replace

damaged, destroyed or stolen covered property.  The Treigles acknowledge that they did not repair or rebuild their home.  In August 2006, the plaintiffs sold the property to Le Paul Homes 1 LLC for $40,000.  See Def's exh. C.  Because the Treigles are not repairing their property, under the clear language of the policy, their recovery is limited to the actual cash value of the damaged property, the calculation of which includes a deduction for depreciation.  Accordingly, the motion for partial summary judgment on the issue of replacement cost as the measure of recovery is denied.

**2.  Collateral source doctrine**

The Treigles contend that, under the collateral source doctrine, the payments received from an independent source are not deducted from any amount recoverable by a plaintiff.  They argue that the flood proceeds are a collateral source because the Treigles paid two premiums for insurance, and no double recovery or windfall exists.

The Treigles argue that the collateral source rule should not be limited to the tort context, but should be applied in contract cases.  In support of their argument, the Treigles point to the Supreme Court of Louisiana's application of the collateral source rule in an environmental pollution case.  See  Louisiana Dept. of Transp. and Development v. Kansas, 846 So.2d 734 (2003).

"Under the collateral source rule, a tortfeasor may not benefit and an injured plaintiff's tort recovery may not be reduced because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution."  Louisiana Dept. of Transp. and Development v. Kansas, 846 So.2d at 739.  "Several public policy concerns support the

collateral source rule." Id.  The defendant should not gain an advantage from benefits provided to the plaintiff independently, and the collateral source rule promotes tort deterrence and accident prevention.  Id.  "[T]he focus of the collateral source rule is that a tortfeasor should not be allowed to benefit from the victim's foresight and prudence in securing insurance and other benefits." Id. at 744.

The court is unpersuaded that Louisiana Dept. of Transp. and Development v. Kansas, in which the Supreme Court of Louisiana applied the collateral source rule in cases arising under the Louisiana Environmental Quality Act (LEQA), supports the Treigle's argument that the collateral source rule is applicable in this case.  The Supreme Court of Louisiana held "that the collateral source rule applies in cases arising under the LEQA, a least where a damaged party is seeking reimbursement only for remediation expenses." Id. at 740.  Further, the Supreme Court of Louisiana stated: "our holding today is commanded by the paramount public interest in ensuring that those persons or entities responsible for harming our environment and the welfare of our citizens be held fully responsible for consequences of their actions, and deterred from committing future violations of the LEQA." Id.  The focus of the analysis was the fact that "a wrongdoer may not benefit." Id. at 741.

The goal of tort deterrence and accident prevention would not be served by application of the collateral source rule in this case because Allstate is not a tortfeasor.  The case involves an insurance contract of indemnity for actual loss, not liability for tort-like conduct or accident prevention.  The motion for partial summary judgment based on the collateral source rule is denied.

**3. Value Policy Law**

The Treigles contend that their property was rendered a total loss and that, under Louisiana Value Policy Law (VPL), La.Rev.Stat. 22:695, they are entitled to recover the stated value of the property covered by the policy. They argue that they purchased a valued policy, which is not governed by the principle of indemnity, and that the policy limits and premiums are derived from the value of the property.

In Chauvin v. State Farm Fire & Casualty Co., 495 F.3d 232, 237 (5th Cir. 2007), the Court of Appeals for the Fifth Circuit concluded that "the VPL does not apply to a total loss not caused by a covered peril."[2] The Court of Appeals examined two possible meanings to the language in the statute providing that "in the case of a total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property":

> 1) in the event of a total loss, an insurer is required to pay the homeowner the agreed full value of a policy as long as a covered loss causes some damage to the property, even if a non-covered peril renders the property a total loss; or (2) an insurer is only required to pay the homeowner the agreed face value of a policy when the property is rendered a total loss by a covered loss.

Id. at 239. The Court of Appeals began the discussion regarding which interpretation of the statute best conforms to the purpose of the law by examining the history of the VPL and its operation as a form of liquidated damages.

> Valued policy laws or so-called total losses statutes dealing with Fire Ins. policies were enacted by many states in the late 1800's and early 1900's principally as a protective measure for insureds. In general, these valued policy laws require that in case of total loss to an insured's property from certain specified perils, the amount stated in the policy

---

[2] The Court of Appeals assumed for purposes of the opinion that the VPL applies to non-fire perils.

9

>declarations is considered the value of the structure at the time of loss and is payable in full. In other words, if the value of property is less than the amount of insurance on a policy covering a building in a state having such a law, the insurer is precluded in most states from arguing that a lesser sum be paid, *i.e.*, actual cash value . . . .
>
>The legislative intent of these laws was to prevent over-insurance and other abuses, that is, to keep insurers and their representatives from writing insurance on property for more than it is actually worth.
>
>A second reason for valued policy laws is to encourage insurers and producers to inspect risks and assist prospective insureds in determining insurable value of properties . . . . It follows that failure of an insurer to inspect a risk for valuation purposes can lead to over-insurance and can produce a moral hazard as well. In other words, if a building is insured for more than its actual worth, an insured might be indifferent about loss prevention. This situation might even give an insured an incentive to intentionally cause damage to his structure.

Id. (quoting Atlas Lubricant Corp. v. Fed. Inso Co. of New Jersey, 293 So.2d 550 (La. Ct. App. 1974)). Based on the purpose of the VPL, the Court of Appeals concluded that "the VPL only requires an insurer to pay the agreed face value of the insured property if the property is rendered a total loss from a covered peril." Id. "[A] total loss resulting from a non-covered peril does not trigger the VPL." Id. n.23. "[A] finding that the statute requires insurers to pay the agreed face value of the property, even if an excluded peril (flooding) causes the total loss, runs counter to the VPL's effort to link insurance recoveries to premiums paid." Id. Further, the Court of Appeals reasoned that the focus of the VPL is on valuation, not coverage; therefore "the statute signals no intent to expand coverage to excluded perils." Id. at 240.

Although the Treigles allege that the property was damaged by wind and flood and that the home is a total loss, there is no allegation that the total loss was caused by wind or any other peril covered under the homeowner's policy. Accordingly, there are no disputed issues of

material fact, and Allstate is entitled to judgment as a matter of law that Louisiana's VPL does not apply.

### III. CONCLUSION

The Treigles' motion for partial summary judgment on the narrow issue of double recovery is denied. Allstate's motion for partial summary judgment on this issue is denied.

The Treigles motion for summary judgment on the issue of the measure of recovery is denied. Under the policy, payment for the loss is based on the actual cash value because the Treigles did not repair or replace the damaged, destroyed or stolen property. The collateral source doctrine and Louisiana value policy law are inapplicable in this case.

New Orleans, Louisiana, this 31st day of October, 2008.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**